JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Joseph Ip ("defendant"), appeals from his conviction and sentence on three counts of receiving stolen property. For the reasons that follow, we affirm.
 {¶ 2} All of the charges against defendant involve property reported stolen from Cleveland State University ("CSU") around November 2000. CSU began an investigation following a string of break-ins around November 2000, where several items of computer equipment were stolen. When it was discovered that similar items were being auctioned over the internet and sold across state lines, the FBI took over the investigation.
 {¶ 3} Defendant testified that during the relevant time frame he was operating a side business buying and selling computer equipment. He posted fliers and distributed business cards at CSU to advertise his business. A man named Mike approached him at CSU seeking to sell some used computer equipment. Defendant stored Mike's phone number in a cellular phone that had been destroyed by the time of the court hearing in 2005. Defendant never knew Mike's last name or any other information about Mike beyond his phone number.
 {¶ 4} Mike delivered the equipment to defendant's parents' house in a truck. Defendant estimated that one of the computers was worth $2,000. He paid Mike $1,000 for all the equipment but did not get a receipt for any of the equipment.
 {¶ 5} The authorities discovered that some of the stolen equipment was being auctioned over the internet by a person named Joseph Ip. In March 2001, the FBI executed a search warrant at the residence where defendant resided. The FBI seized electronics and computer equipment. Although the FBI immediately began requesting defendant to produce proof that he owned the seized items, defendant never did. While defendant believes he could have made contact with Mike in 2000 and for several years later, he did not make any effort to do so. Instead, defendant consulted with an attorney and allegedly acted on the advice of his counsel when he chose not to cooperate or assist with the on-going federal investigation.
 {¶ 6} The federal investigation, in part, required the recovery of items that defendant had auctioned over the internet from the end purchasers. For example, the FBI retrieved one item from an individual in Virginia. The federal investigation stalled for about six to eight months in 2001 following the terrorist attacks of September 11th. The FBI resumed the investigation by researching manufacturers and attempting to track the rightful owners of the seized equipment. The FBI did not receive the last manufacturer's response until July 2003.
 {¶ 7} In 2003, the United States Attorney's office declined to prosecute defendant and the FBI notified CSU of this fact in April 2004. CSU police retrieved the file and seized equipment from the FBI in August 2004. A few months later, the case was presented to the Cuyahoga County Grand Jury, which issued the indictment against defendant in this case.
 {¶ 8} Defendant moved to dismiss the case for pre-indictment delay. The trial court held a hearing where defendant, a CSU police officer, and an FBI special agent all testified. The trial court denied the motion finding, inter alia, that defendant did not suffer actual prejudice by the delay and that the pre-indictment delay was justified. Defendant pled no contest, was found guilty and sentenced to a 16-month prison term. Defendant assigns three assignments of error for our review:
 {¶ 9} "I. Mr. Ip was denied due process under theFourteenth Amendment and Article I, Section 10 of the Ohio Constitution by virtue of the excessive delay in his being indicted for crimes known to law enforcement for almost four years prior to charges being filed."
 {¶ 10} The statute of limitations provides the "primary guarantee against bringing overly stale criminal charges."United States v. Lovasco (1977), 431 U.S. 783. Notwithstanding, dismissal of charges commenced within the period of limitations may be required when there has been an unjustifiable pre-indictment delay.
 {¶ 11} "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution." State v. Luck (1984),15 Ohio St.3d 150, paragraph 2 of the syllabus; see, also, United Statesv. Lovasco (1977), 431 U.S. 783. If defendant establishes actual prejudice, the burden shifts to the State to establish justifiable delay. Id. at 153; confirmed by State v. Whiting
(1998), 84 Ohio St.3d 215, 217.
 {¶ 12} Courts reviewing a decision on a motion to dismiss for pre-indictment delay accord deference to the lower court's findings of fact but engage in a de novo review of the lower court's application of those facts to the law. State v.Cochenour (Mar. 8, 1999), Ross App. No. 98CA2440, citing Statev. Metz (Apr. 21, 1998), Washington App. No. 96CA48.
 {¶ 13} Defendant offered the following as proof of actual prejudice: (1) dimming of memories with time; (2) loss of business cards and fliers evidencing the computer business he was operating at the time of the offense; (3) lost receipts for transactions from his business; and (4) the lost contact information for "Mike," which was stored in a cellular phone that was destroyed.
 {¶ 14} The trial court found that defendant failed to establish actual prejudice. We agree. A generalized claim that memories have faded is insufficient to establish actual prejudice. Cochenour, supra, citing State v. Metz (Apr. 21, 1998), Washington App. No. 96CA48; State v. Glasper (Feb. 21, 1997), Montgomery App. No. 15740. Thus, that memories may fade over time does not offer the concrete proof necessary to establish actual prejudice.
 {¶ 15} The loss of business cards and fliers would not establish actual prejudice in this case. Whether defendant had a legitimate business in 2000 is not probative of whether he received stolen property while operating that business. In any case, we must defer to the trial court's factual finding that defendant knew the CSU property he received from Mike was stolen.
 {¶ 16} In this case, defendant admitted that he did not obtain any receipts from Mike. This case involves only the equipment defendant received from Mike. Therefore, the claim that defendant suffered actual prejudice due to lost receipts is not supportable.
 {¶ 17} Lastly, defendant maintains he suffered actual prejudice because he lost the contact information he had stored in a cellular phone. A bare assertion that a witness would have offered exculpatory evidence is insufficient to establish actual prejudice without other corroborating evidence. State v. Loomer
(Sept. 28, 1995), Cuyahoga App. No. 68103, citing U.S. v. Muniz
(1988), 690 F.Supp. 482 (holding death of an alibi witness is insufficient to establish actual prejudice).
 {¶ 18} While defendant believes Mike would have offered exculpatory evidence, there is no evidence to corroborate his belief. Further, there is no indication as to what, if anything, Mike would have testified to in this case. Further, defendant made no effort to contact Mike despite his knowledge of an on-going criminal investigation since 2000. Instead, defendant stated he made a conscious decision, based on legal advice, not to contact Mike and not to cooperate with the investigation.
 {¶ 19} In addition, the trial court alternatively found that the State satisfied its burden of establishing justifiable reasons for the pre-indictment delay. The trial court found reasonable CSU's decision to defer its investigation to the federal investigation. We are unable to find any authority to support defendant's position that deferring to a federal investigation constitutes unjustifiable pre-indictment delay.
 {¶ 20} There is no allegation that the federal government engaged in any undue or prejudicial delay during its investigation that continued until 2003. The CSU investigation resumed shortly after the federal government declined prosecution. We have reviewed the record and agree with the trial court's conclusion.
 {¶ 21} The CSU officer testified that he turned over the investigation to the FBI when he learned the property was being sold interstate. At that point, CSU no longer possessed the equipment that was the subject of the investigation and therefore CSU subordinated its investigation to the federal government. After reacquiring the equipment and the FBI's file, CSU reallocated its manpower to the investigation.
 {¶ 22} The allocation of manpower and the priority of investigations are legitimate reasons for delay and within the purview of the prosecutor's judgment. See United States v.Bouthot (1988), 685 F.Supp. 286, 298 ("It would not only be inappropriate, but also injurious to the administration of justice if the operation of executive law enforcement priorities and related allocations of manpower became litigable issues.")
 {¶ 23} Based on the foregoing, Assignment of Error I is overruled.
 {¶ 24} "II. Mr. Ip's pleas must be vacated because the trial court did not advise him of his right to testify at trial."
 {¶ 25} In regards to non-constitutional rights, we review a trial court's adherence to Crim.R. 11 for substantial compliance.State v. Scott, Cuyahoga App. Nos. 84382, 84383, 84384, 84389,2005-Ohio-3690. Where the constitutional rights listed in Crim.R. 11(C) are concerned, the review is heightened to a strict compliance analysis. State v. Nero (1990), 56 Ohio St.3d 106;State v. Higgs (1997), 123 Ohio App.3d 400.
 {¶ 26} Crim.R. 11(C) provides, in relevant part, as follows:
 {¶ 27} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 28} "* * *
 {¶ 29} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the State to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 30} Defendant maintains that the trial court failed to advise him of his right to testify in violation of Crim.R. 11 and his constitutional rights. We disagree. Crim.R. 11 requires the trial court to, among other things, advise defendant he "cannot be compelled to testify against himself." The trial court specifically advised defendant "you have the right to remain silent, not to testify at trial and no one can comment on the fact that you did not testify at trial." (R. 115). Accordingly, the trial court strictly complied by informing defendant of the constitutional rights enumerated in Crim.R. 11.
 {¶ 31} The right to testify is not specifically enumerated in Crim.R. 11 and our review of the record indicates that the trial court substantially advised defendant of this right. In fact, defendant previously exercised his right to testify during the hearing on his motion to dismiss. At that time, the trial court made a point to advise defendant of his rights attendant to testifying in his defense. (R. 11-14).
 {¶ 32} Assignment of Error II is overruled.
 {¶ 33} "III. Mr. Ip's Sixth Amendment right to trial by jury was violated when he was sentenced to more-than-the-minimum terms of imprisonment for fourth- and fifth-degree felonies on the basis of findings made by a judge alone that were legally essential for the punishment imposed."
 {¶ 34} Defendant challenges the prison sentence imposed following his convictions for felonies of the fourth and fifth degree as being unconstitutional. Defendant maintains that the provisions of R.C. 2929.13(B) violate his Sixth Amendment rights as construed by Blakely v. Washington (2004),542 U.S. 296.[1] The Ohio Supreme Court recently held that this provision of Ohio's sentencing scheme is not implicated or affected by the United States Supreme Court's decision inBlakely. State v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856, ¶ 69-70.
 {¶ 35} Assignment of Error III is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, J., Concurs.
 Karpinski, J., concurs and dissents. (See concurring anddissenting opinion attached).
[1] Although defendant also challenges the imposition of more than the minimum prison sentence as being unconstitutional under R.C. 2929.14(B), the record indicates he has previously served a prison term rendering his argument in this regard moot.